1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   MARTIN J. WALSH, Secretary of Labor,        Case No.:  23-cv-172 JM(BLM)
     United States Department of Labor,
12                              Plaintiff,        **CONSENT JUDGMENT**
13
     v.
14
     FREIG CARRILLO FORWARDING,
15   INC, *et al*.,
16                              Defendants.
17

18        Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor,

19   and Defendants Freig Carrillo Forwarding, Inc. ("Freig") and Javier Martin Freig Carrillo,

20   individually and as a managing agent and owner of entity defendant Freig (the

21   "Defendants"), (collectively the "Parties") have agreed to resolve the matters in

22   controversy in this civil action and agree to the entry of this Consent Judgment and

23   Injunction ("Consent Judgment") as provided below.

24        **STATEMENTS BY AND AGREEMENTS BETWEEN THE PARTIES**

25        A.     The Secretary filed a Complaint in the above-captioned proceeding naming

26   Defendants and alleging they violated provisions of sections 6, 7, 11(c), 15(a)(1), 15(a)(2)

27   and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C.

28   §§ 206, 207, 211(c), 215(a)(1), 215(a)(2) and 15(a)(5).

B.      Defendants have retained defense counsel and acknowledge receipt of a copy of the Secretary's Complaint in this action.

C.      Defendants waive issuance and service of process of the Summons and Complaint and waive their response to the Secretary's Complaint.  This provision shall not serve as a general waiver of service and personal jurisdiction.

D.      The Secretary conducted an investigation of Defendants pursuant to the FLSA covering the period of December 15, 2019, through December 12, 2021. The parties have agreed to settle and resolve all alleged FLSA violations attributable to Defendants through this Consent Judgment.

E.      The Parties agree to waive findings of fact and conclusions of law and agree to the entry of this Consent Judgment without further contest.  Further, nothing in this Consent Judgment requires Defendants to take any action contrary to Mexican laws in Mexico.

F.      For purposes of this Consent Judgment only, Defendants admit that the court has jurisdiction over the Defendants and the subject matter of this civil action, and that venue lies in the Southern District of California.

G.      Defendants acknowledge that Defendants and any individual or entity acting on their behalf or at their direction will be provided with notice of the provisions of this Consent Judgment within 30 days of entry. Defendants represent that they and all individuals and entities acting on their behalf or at their direction and any individual, entity, or corporation with ownership or managerial authority over Defendants have notice of, and understand, the provisions of this Consent Judgment.

H.      Defendants admit that the employees, identified on **Exhibit A**, which the Parties have agreed to file under seal[1],  handle and transport goods at their warehouses (or

---

[1] Defendants may file redacted copies of Exhibit A if an employee contests whether they are due back wages covered by this Consent Judgment.  The redacted Exhibit A must redact

have done so in the past) located at 9505 Airway Road, Suite 100, San Diego, California 92154; 1430 N. Industrial Park Drive, Nogales, Arizona 85621; 1421 N. Industrial Park Drive Nogales, Arizona 85621; 1373 N. Industrial Park Drive, Nogales, Arizona 85621; and 482 N. Mariposa Rd., Building B, Nogales, Arizona 85621.  These goods have been moved in commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s), and are offered for transportation and shipment.

## JUDGMENT AND PERMANENT INJUNCTION

Pursuant to the statements and agreements above, upon joint motion of the attorneys for the Parties, and for cause shown,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, Defendants, their officers, agents, servants, employees, successor companies, parties in interest, and all persons and entities acting at its direction or in concert or participation with it, are permanently enjoined and restrained from violating the FLSA, including through any of the following manners:

1.     Defendants shall not, contrary to Section 6 of the FLSA, 29 U.S.C. § 206, pay any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s), wages at a rate less than the operative minimum wage, which cannot be less than $7.25 per hour (or at a rate less than such other applicable minimum rate as may hereafter be established by amendment to the FLSA).

2.     Defendants shall not, contrary to Section 7 of the FLSA, 29 U.S.C. § 207, employ any employee who in any workweek is engaged in commerce, within the meaning of the FLSA, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Section of 3(s) of the FLSA, 29 U.S.C.

---

all employee names and payment information except for the employee contesting the back wages owed.

§ 203(s), for any workweek longer than 40 hours unless such employee receives compensation for his or her employment in excess of 40 hours in such workweek at a rate not less than one and one-half times the regular rate at which he or she is employed.

3.    Defendants shall not, contrary to FLSA Section 15(a)(1), 29 U.S.C. § 215(a)(1), transport, offer for transportation, ship, deliver, or sell in commerce (or ship, deliver, or sell with knowledge or reason to believe that shipment, delivery, or sale in commerce is intended) goods in the production of which any employee (of the Defendants or other(s)) has been employed in violation of the FLSA's minimum wage (29 U.S.C. § 206) or overtime pay provisions (29 U.S.C. § 207).

4.    Defendants shall not fail to make, keep, make available to authorized agents of the Secretary for inspection, transcription, and/or copying, upon their demand for such access, and preserve records of employees and of the wages, hours, and other conditions and practices of employment maintained, as prescribed by regulations issued, and from time to time amended, pursuant to FLSA Sections 11(c) and 15(a)(5), 29 U.S.C. §§ 211(c) and 215(a)(5), and the implementing regulations found in Title 29, Code of Federal Regulations, Part 516.

5.    Defendants, jointly and severally, shall not continue to withhold the payment of $110,602.01 in minimum wage pay hereby found to be due by the Defendants under the FLSA to employees, resulting from their employment by Defendants during the period of December 15, 2019, through December 12, 2021 ("Back Wage Accrual Period").

6.    Defendants, jointly and severally, shall not continue to withhold the payment of $376,361.58 in overtime pay hereby found to be due by Defendants under the FLSA to employees, resulting from their employment by Defendants during the Back Wage Accrual Period.

7.    Defendants, jointly and severally, will further pay the sum of $486,963.59 in liquidated damages hereby found to be due by Defendants under the FLSA to employees, resulting from their employment by Defendants during the Back Wage Accrual Period.

8.      Defendants, jointly and severally, will further pay the Department of Labor an additional sum of $26,215.00 in civil monetary penalties.

9.      The total amount Defendants owe in unpaid minimum wages, unpaid overtime, liquidated damages, and civil money penalties under this Consent Judgment is $1,000,142.18.  Defendants shall pay $400,000 in one payment due within 15 days of the court entering this Consent Judgment, which shall be credited to civil monetary penalties and liquidated damages due.  After the initial payment, Defendants shall pay interest accruing at a rate of 1% compounded annually on the remaining $600,142.18 in back wages and liquidated damages due until fully paid.  Thereafter, Defendants shall pay $16,928.87 a month beginning on the 15th day of the month after the first payment is made.  The balance of $600,142.18 of back wages and liquidated damages plus any interest owed shall be paid within three (3) years of the court approving of this Consent Judgment.  The payment schedule is outlined in **Exhibit C**.  Defendants may make the payments for minimum wage and overtime back wages owed as well as liquidated damages as required by this Consent Judgment (back wages plus interest as applicable) online by ACH transfer, credit card, debit card, or digital wallet by going to https://www.pay.gov/public/form/start/77761888, or by going to www.pay.gov and searching "WHD Back Wage Payment - WE Region".  Payments shall reference BW Case Number # 1954353.  Defendants shall make the payment for civil monetary penalties by going to www.pay.gov, then entering "WHDCMPWE" in the search field, clicking search, selecting the "WHD Civil Money Penalty Payment Form – Western Region" payment form, clicking the blue "Continue," and following payment instructions.  Defendants may pay without penalty all or a portion of the amount owed earlier than it is due.  Any early payments will reduce the principal balance due, and consequently may reduce the interest owed as interest will be assessed on the total outstanding principle.

10.     Defendants shall execute two deeds of trust to secure the payments described in **Exhibit D**.  The deeds of trust shall be recorded against the real property commonly known as 312 West Santa Barbara Street, Nogales, AZ 85621 and 3420 N. Camino Rio

Colorado Road, Tucson, AZ 85712, is attached hereto as **Exhibit D**. Defendants have indicated that neither property is encumbered, and that the value of these properties is sufficient equity to satisfy the Judgment of $600,142.18 against Defendants. The Secretary shall record the deeds of trust attached as **Exhibit D** once the court signs this Consent Judgment. Defendants agree not to further encumber the property until the deeds of trust are recorded. If Defendants default on their payment obligations, they shall be given 30 days' written notice to cure the default (served electronically to Defendants' counsel of record). If Defendants fail to cure their default, Defendants will cooperate with and provide assistance to the Secretary in executing on the deeds of trust. Within 60 days of Defendants notifying that the Consent Judgment has been satisfied in full, including any interest or penalties for paying the amount due late, the Secretary will provide Defendants with deeds of reconveyance (or any other instrument legally required) and provide any necessary cooperation to effectuate the cancellation and removal of the deeds or other encumbrance associated with this Consent Decree. Defendants will then file the deeds of reconveyance (or any other instrument legally required) provided by the Secretary to terminate the Secretary's deeds of trust.

11.   Defendants will cooperate in good faith with and provide reasonable assistance, including employee contact information, to the Wage and Hour Division to assist with the distribution of the wages and location of employees.

12.   The Secretary shall allocate and distribute the funds described in paragraphs 5 and 6 less deductions for employees' share of social security and withholding taxes on the back wage amounts to the persons named in the attached **Exhibit A**, or to their estates if that be necessary, in his sole discretion, and any money not so paid, because of an inability to locate the proper persons or because of their refusal to accept it, shall be then deposited in the Treasury of the United States, as miscellaneous receipts, pursuant to FLSA Section 16(c), 29 U.S.C. § 216(c).

13.   The Secretary requires that wages due under this Consent Judgment to employees who are Mexican residents, be funded in U.S. Dollars, subject to normal

withholdings and deductions under U.S. law. Defendants make no warranties or representations to its employees on **Exhibit A** regarding the employees' tax consequences related to these payments under U.S. law. The Secretary will prepare the IRS Forms 1099 and W-2, as appropriate, for payments made to employees under this Consent Judgment.

14. In the event of any default in the timely making of any payment due hereunder, the full amount due under the back wage provisions of this Consent Judgment which then remains unpaid, plus post-judgment interest at the rate of 10% per year, from the date of this Judgment until paid in full, shall become due and payable upon the Secretary's sending by ordinary mail a written demand to the last business address of Defendants then known to the Secretary.

15. Defendants, their officers, agents, servants, and employees and those persons in active concert or participation with Defendants, shall not in any way directly or indirectly, demand, require or accept any of the back wages from the individuals listed on **Exhibit A**. Defendants shall not threaten or imply that adverse action will be taken against any employee because of their receipt of funds to be paid under this Consent Judgment. Violation of this Paragraph may subject Defendants to equitable and legal damages, including punitive damages and civil contempt.

16. Defendants, their officers, agents, servants, and employees and those persons in active concert or participation with Defendants, shall not in any way retaliate or take any adverse employment action, or threaten or imply that adverse action will be taken against any employee who exercises or asserts their rights under the FLSA or provides information to any public agency investigating compliance with the FLSA. Violation of this Paragraph may subject Defendants to equitable and legal damages, including punitive damages and civil contempt.

17. Defendants shall comply with the FLSA, and if not already in effect at the time of entry of this Consent Judgment, shall amend and maintain their payroll practices as follows:

23-cv-172 JM(BLM)

a.     Defendants shall accurately record the information required by 29 C.F.R. § 516.2 in the payroll records, including, for each employee (1) the rate(s) of pay for each of the hours worked during a workweek; (2) the start, stop, and total hours employees work each workweek; (3) the total weekly straight-time earnings due for the hours worked during the workweek; and (4) the total premium pay for overtime hours.

b.     Defendants shall record all wages paid to employees, regardless of the manner of payment, including but not limited to the currency in which the payment was made, on its payroll records. When Defendants record the manner of payment, Defendants will specify the currency in which the payment was made.

c.     Defendants shall maintain a physical copy of all payroll records and time records for all employees at a location within the United States.

d.     Defendants shall not alter or manipulate time or payroll records to reduce the number of hours actually worked by an employee, and Defendants shall not encourage workers to under-report their hours worked.

e.     Defendants shall not direct supervisors, employees, or payroll preparers to falsify time or payroll records in any manner including reducing the number of hours worked by employees, and Defendants shall direct supervisors and payroll providers to encourage workers to report all hours worked.

18.     Within 30 days of the entry of this Consent Judgment, Defendants shall supply all their employees with copies of the attached **Exhibit B**, which summarizes terms of this Consent Judgment and the employees' rights under the FLSA, in English and Spanish. In addition, Defendants shall provide copies of **Exhibit B** to all new hires and post a copy at their location(s) in an area that is frequented by employees and where it is visible. This provision shall be in effect for a period of three years from the date of entry of this Judgment by the court.

19.     On at least an annual basis, Defendants shall hire an independent third-party to conduct supervisor training as to the requirements of the FLSA.  The training shall be for one session of not less than one hour with an opportunity for questions and answers. The training shall address the FLSA's minimum wage, overtime, record keeping, and anti-retaliation requirements, including instruction on determining whether workers are classified as employees for purposes of the FLSA and whether employees are exempt from the FLSA's overtime requirements. All supervisors and employees who determine Defendants' employees' pay or schedules or who prepare payroll for workers who perform work in the United States shall attend this training.  The training shall be compensable time for which employees shall receive pay and shall not exceed one hour.  Defendants shall maintain documentation of these trainings for a period of four years and shall provide it to representatives of the Secretary of Labor upon request.  This provision shall be in effect for a period of three years from the date of entry of this Judgment by the court.

20.     Within 60 days of the date that Defendants sign this Consent Judgment, Defendants shall hire an independent third-party to conduct non-supervisory employee training as to the requirements of the FLSA in their native language.  The training shall be compensable time for which employees shall receive pay and shall not exceed one hour. The independent third-party conducting the training shall include, but are not limited to: minimum wage, overtime, recordkeeping provisions of the FLSA, and instruction on determining whether workers are classified as employees for purposes of the FLSA and whether employees are exempt from the FLSA's overtime requirements.  This training shall be repeated two additional times, one to occur no earlier than twelve months after the initial training and no later than twenty-four months after the initial training, and another to occur no earlier than twelve months after the second training and no later than twenty-four months after the second training.

21.     Defendants will allow the Department of Labor to inspect any payroll records for employees working in the United States and video surveillance for any locations in the United States upon request.

22.     At least once a year, Defendants will permit the Department of Labor's Wage and Hour Division to speak to Defendants' employees, including supervisors, to confirm that Defendants are complying with the FLSA and with this Consent Judgment and to answer any questions Defendants' employees may have about their rights under the FLSA. This time shall be compensable time for which employees shall receive pay.  Defendants consent to the Wage and Hour Division speaking to Defendants' employees, including supervisors, without Defendants or their representatives present.

**FURTHER IT IS ORDERED** that the filing, pursuit, and/or resolution of this proceeding with the entry of this Judgment shall not act as or be asserted as a bar to any action under FLSA Section 16(b), 29 U.S.C. § 216(b), as to any employee not named on the attached **Exhibit A** nor as to any employee named on the attached **Exhibit A** for any period not specified therein; and,

**IT IS FURTHER ORDERED** that each party shall bear its own fees and other expenses incurred by such party in connection with any stage of this proceeding, including but not limited to attorneys' fees, which may be available under the Equal Access to Justice Act, as amended; and,

**IT IS FURTHER ORDERED** that this court shall retain jurisdiction of this action for purposes of enforcing compliance with the terms of this Consent Judgment

IT IS SO ORDERED.

Dated:    March 9, 2023

Hon. Jeffrey T. Miller
United States District Judge

For the Plaintiff:

MARC PILOTIN

Regional Solicitor


BORIS ORLOV

Counsel for Wage and Hour Litigation


1/27/2023

ADRIANA E. AHUMADA

Trial Attorney

For Defendants:

Defendants hereby appear and consent to the entry of this Judgment and waive
notice by the Clerk of Court.


For Freig Carrillo Forwarding, Inc. and In Their Personal Capacities:

01 / 27 / 2023

JAVIER MARTIN FREIG CARRILLO
Individually and as a managing agent and owner of
Freig Carrillo Forwarding, Inc.

01 / 27 / 2023


Approved as to Form:

*Annie Ellis*    01 / 26 / 2023

ANNIE ELLIS
Attorney for Defendants

1
2
3
4
5
6
7
8
9
10

**EXHIBIT A**

**FILED UNDER SEAL**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**
**SUS DERECHOS BAJO LA FLSA**
**(California)**

El Departamento de Trabajo federal y su empleador han llegado a un acuerdo para resolver una investigación bajo la Ley de Normas Razonables de Trabajo (FLSA en inglés) del Departamento de Trabajo sobre las prácticas de pago de su empleador. Según la FLSA:

- Si usted trabaja 40 horas o menos en una semana, su empleador le debe el salario mínimo federal ($7.25 por hora) por todas las horas que usted trabajo.
    - o Por ejemplo, si usted trabajara 40 horas durante una semana por $5 cada hora, o menos del salario mínimo federal, su empleador le debería más dinero.
    - o Usted puede calcular lo que su empleador le debe si multiplica las horas que trabajo por la diferencia entre el salario mínimo federal y el salario por hora que le pagaron.
    - o En este ejemplo, la diferencia entre el salario mínimo federal ($7.25) y su salario horario ($5.00) es $2.25. Multiplicaría $2.25 por 40 horas para determinar que su empleador le debe $90.00.
- Bajo la ley federal, si usted trabaja más de cuarenta horas en una semana, su empleador le debe el más alto de su salario horario o el salario mínimo de California (que es aún más alto que el salario mínimo federal) por todas las horas que usted trabaja. Su empleador también le debe pago adicional de sobretiempo por todas las horas que trabaja más de 40 horas por semana.
    - o El pago de sobretiempo federal es adicional a su salario horario y debe ser el 50 por ciento de su salario horario, que tiene que ser al menos el equivalente al salario mínimo de California.
    - o Empezando el 1 de enero, 2023, el salario mínimo estatal del estado de California es $15.00 para todos empleados.
    - o Por ejemplo, si usted trabaja por un empleador en California, su salario horario es $15.00, y usted trabaja 50 horas en una semana, se le debería:
        - ▪ Su pago normal por hora (que también se llama "straight time" en ingles sería 50 horas x $15.00 = $750.00.
        - ▪ Más tiene que agregar el pago de sobretiempo federal por todas las horas que trabajo más de 40 horas. En este ejemplo, usted trabajo 10 horas más de cuarenta horas. Su salario horario es $15.00, que es más alto que salario mínimo federal y equivalente que el salario mínimo de California. El pago de sobretiempo por cada hora adicional de cuarenta sería el 50 por ciento de $15.00, o $7.50. Como usted trabajo 10 horas más de cuarenta, el pago de sobre tiempo esta semana seria 10 horas x $7.50 = $75.00.
        - ▪ Su pago total para la semana sería $750.00 + $75.00 = $825.00.

- o Por ejemplo, si usted trabaja por un empleador en California, su salario horario es $5.00, y usted trabaja 50 horas en una semana, se le debería:
  - ▪ Su pago normal por hora (que también se llama "straight time" en ingles, que sería 50 horas x $5.00 = $250.00.
  - ▪ También su empleador le debe la diferencia entre su salario horario de $5.00 y el salario mínimo de California de $15.00, o 50 horas x $10.00 = $500.00.
  - ▪ Más, bajo la ley federal tiene que agregar el pago de sobretiempo federal por todas las horas que trabajo más de 40 horas. En este ejemplo, usted trabajo 10 horas más de cuarenta horas. Su salario horario es $15.00, que es más alto que salario mínimo federal y equivalente que el salario mínimo de California. El pago de sobretiempo por cada hora adicional de cuarenta sería el 50 por ciento de $15.00, o $7.50. Como usted trabajo 10 horas más de cuarenta, el pago de sobre tiempo esta semana seria 10 horas x $7.50 = $75.00.
  - ▪ Su pago total para la semana sería $250.00 + $500.00 + $75.00 = $825.00.
- Su empleador debe documentar y reportar correctamente cada hora que trabaja y todos los pagos que recibe.
- Su empleador no puede amenazarlo ni tomar medidas en su contra por hablar con un representante del DOL, participar en un caso legal del DOL o ejercer sus derechos ante la FLSA.
- **Es ilegal que alguien le haga daño porque habló con un representante del DOL, participó en un caso legal del DOL o habló sobre sus derechos ante la FLSA. Es ilegal que su empleador tome las siguientes medidas porque ejerció sus derechos de FLSA:**
  - o Despedirlo a usted o a cualquier amigo o familiar que trabaje con usted;
  - o Negarse a pagarle por todas las horas que trabaja;
  - o Negarse a emplear a un familiar suyo;
  - o Reportarle al gobierno para su deportación;
  - o Reducir sus horas de trabajo o la cantidad que gana;
  - o Amenazarlo con problemas legales o usar a su abogado para hacerle daño;
  - o Hacer cualquier otra amenaza o tomar cualquier acción dañina contra usted.
- También es ilegal que alguien le obligue a firmar un documento con información falsa sobre las horas que trabaja, el pago que recibe, o cualquier otra cosa relacionada con sus derechos a la FLSA.
- Usted tiene el derecho legal de decir la verdad sobre sus condiciones de trabajo sin que nadie lo amenace o lo cause daño.
- Estas leyes se aplican a usted sin importancia de su estatus migratorio.

**Si ocurre alguna de estas acciones, comuníquese inmediatamente con el DOL al (619) 557-5110**

**EXHIBIT B**
**YOUR RIGHTS UNDER THE FLSA**
**(California)**

The U.S. Department of Labor ("DOL") and your employer have reached an agreement to resolve the Department's investigation under Fair Labor Standards Act (FLSA) into your employer's pay practices.  Under the FLSA:

- If you work 40 hours a week or less, your employer must pay you the federal minimum wage, which is $7.25 per hour, for all hours worked.
  - For example, if you worked 40 hours at an hourly rate of $5.00, or less than the federal minimum wage, your employer would owe you more money.
  - You can calculate what your employer would owe you by multiplying the hours that you worked by the difference between the federal minimum wage and the hourly rate that you were paid.
  - In this example, the difference between the minimum wage ($7.25) and your hourly rate ($5.00) is $2.25. You would multiply $2.25 by 40 hours to determine that your employer owes you $90.00.
- Under federal law, if you work more than 40 hours per week, your employer owes you your hourly rate or the California state minimum wage (which is higher than the federal minimum wage), whichever is higher, for all hours that you work. Your employer also owes you additional overtime pay for all hours that you worked over 40 hours.
  - Federal Overtime pay is in addition to your normal hourly pay and must be 50 percent of your normal hourly pay or the California state minimum wage, whichever is higher, for each hour that you work.
  - Starting January 1, 2023, the California minimum wage will be $15.00 for all employees.
  - For example, if you worked for an employer in California, your hourly rate was $15.00 an hour, and you worked 50 hours in a week, you would be owed:
    - Your normal pay for each hour (also known as "straight time"), 50 hours x $15.00 = $750.00.
    - Under federal law, you also would be owed overtime pay for all hours over 40 that you worked. In this example, you worked 10 hours more than 40 hours. Your hourly rate $15.00, which is higher than the federal minimum wage and equivalent to the state minimum wage. The overtime pay for each hour would be $15.00 multiplied by 50 percent, which equals $7.50. Therefore, your overtime premium for that week would 10 hours x $7.50 = $75.00
    - Your total weekly pay would therefore be $750.00 + $75.00 = $825.00.

23-cv-172 JM(BLM)

   ○   For example, if you worked for an employer in California with less than 26 employees, your hourly rate was $5.00 an hour, and you worked 50 hours in a week, you would be owed:

     ▪   Your normal pay for each hour, 50 hours x $5.00 = $250.00.

     ▪   You also would be owed difference between your pay of $5.00 an hour and California minimum wage of $15.00 per hour, 50 hours x $10.00 = $500.00

     ▪   In addition, under federal law, you would be owed overtime pay for all hours over 40 that you worked. In this example, you worked 10 hours more than 40 hours. The overtime pay for each hour would be $15.00 multiplied by 50 percent, which equals $7.50. Therefore, your overtime premium for that week would 10 hours x $7.50 = $75.00

   ○   Your total weekly pay would therefore be $250.00 + $500.00 + $75.00 = $825.00.

- Your employer must correctly document and report each hour you work and all pay you receive.
- Your employer cannot threaten you or take action against you for speaking to a DOL representative, participating in a DOL legal case, or exercising your FLSA rights.
- It is illegal for anyone to harm you because you talked to a DOL representative, participated in a DOL legal case, or spoke up about your FLSA rights.  It is illegal for your employer to take the following actions because you exercised your FLSA rights:

   ○   Fire you or any friends or relatives that work with you;

   ○   Refuse to pay you for all hours you work;

   ○   Refuse to hire a relative of yours;

   ○   Report you to the government for deportation;

   ○   Reduce your work hours or the amount you earn;

   ○   Threaten you with legal problems or threaten to use their lawyer to harm you;

   ○   Make any other threat or take any harmful action against you.

- It is also illegal for anyone to force you to sign a document with false information about the hours you work, pay you receive, or anything else related to your FLSA rights.
- You have the legal right to tell the truth about your working conditions without anyone threatening or causing you harm.
- These laws apply to you regardless of your immigration status.

**If any of these actions occur, please immediately contact the DOL at (619) 557-5110.**

23-cv-172 JM(BLM)

**EXHIBIT B**
**SUS DERECHOS BAJO LA FLSA**
**(Arizona)**

El Departamento de Trabajo federal y su empleador han llegado a un acuerdo para resolver una investigación bajo la Ley de Normas Razonables de Trabajo (FLSA en inglés) del Departamento de Trabajo sobre las prácticas de pago de su empleador. Según la FLSA:

- Si usted trabaja 40 horas o menos en una semana, su empleador le debe el salario mínimo federal ($7.25 por hora) por todas las horas que usted trabajo.
  - Por ejemplo, si usted trabajara 40 horas durante una semana por $5 cada hora, o menos del salario mínimo federal, su empleador le debería más dinero.
  - Usted puede calcular lo que su empleador le debe si multiplica las horas que trabajo por la diferencia entre el salario mínimo federal y el salario por hora que le pagaron.
  - En este ejemplo, la diferencia entre el salario mínimo federal ($7.25) y su salario horario ($5.00) es $2.25. Multiplicaría $2.25 por 40 horas para determinar que su empleador le debe $90.00.
- Bajo la ley federal, si usted trabaja más de cuarenta horas en una semana, su empleador le debe el más alto de su salario horario o el salario mínimo de Arizona (que es aún más alto que el salario mínimo federal) por todas las horas que usted trabaja. Su empleador también le debe pago adicional de sobretiempo por todas las horas que trabaja más de 40 horas por semana.
  - El pago de sobretiempo federal es adicional a su salario horario y debe ser el 50 por ciento de su salario horario, que tiene que ser al menos el equivalente al salario mínimo de Arizona.
  - Hasta el 31 de diciembre, 2023, el salario mínimo estatal del estado de Arizona es $13.85.
  - El salario mínimo del estado de Arizona puede aumentar cada año porque la ley estatal para salarios justos y familias saludables de Arizona tiene una provisión que aumenta el salario mínimo anualmente en acuerdo con aumentos de costo de vida.
  - Por ejemplo, si usted trabaja por un empleador en Arizona, su salario horario es $13.85, y usted trabaja 50 horas en una semana, se le debería:
    - Su pago normal por hora (que también se llama "straight time" en ingles sería 50 horas x $13.85 = $692.50.
    - Más tiene que agregar el pago de sobretiempo federal por todas las horas que trabajo más de 40 horas. En este ejemplo, usted trabajo 10 horas más de cuarenta horas. Su salario horario es $13.85, que es más alto que salario mínimo federal y equivalente que el salario mínimo de Arizona. El pago de sobretiempo por cada hora adicional de cuarenta seria el 50 por ciento de $13.85, o $6.925. Como usted trabajo 10 horas

17

más de cuarenta, el pago de sobre tiempo esta semana seria 10 horas x $6.925 = $69.25.

- ▪ Su pago total para la semana sería $692.50 + $69.25 = $761.75.
- o Por ejemplo, si usted trabaja por un empleador en Arizona, su salario horario es $5.00, y usted trabaja 50 horas en una semana, se le debería:
  - ▪ Su pago normal por hora (que también se llama "straight time" en ingles sería 50 horas x $5.00 = $250.00.
  - ▪ También su empleador le debe la diferencia entre su salario horario de $5.00 y el salario mínimo de Arizona de $13.85, o 50 horas x $8.85 = $442.50.
  - ▪ Más, bajo la ley federal tiene que agregar el pago de sobretiempo federal por todas las horas que trabajo más de 40 horas. En este ejemplo, usted trabajo 10 horas más de cuarenta horas. Su salario horario es $13.85, que es más alto que salario mínimo federal y equivalente que el salario mínimo de Arizona. El pago de sobretiempo por cada hora adicional de cuarenta seria el 50 por ciento de $13.85, o $6.925. Como usted trabajo 10 horas más de cuarenta, el pago de sobre tiempo esta semana seria 10 horas x $ = $69.25.
  - ▪ Su pago total para la semana sería $250.00 + $442.50 + $69.25 = $761.75

- Su empleador debe documentar y reportar correctamente cada hora que trabaja y todos los pagos que recibe.
- Su empleador no puede amenazarlo ni tomar medidas en su contra por hablar con un representante del DOL, participar en un caso legal del DOL o ejercer sus derechos ante la FLSA.
- Es ilegal que alguien le haga daño porque habló con un representante del DOL, participó en un caso legal del DOL o habló sobre sus derechos ante la FLSA. Es ilegal que su empleador tome las siguientes medidas porque ejerció sus derechos de FLSA:
  - o Despedirlo a usted o a cualquier amigo o familiar que trabaje con usted;
  - o Negarse a pagarle por todas las horas que trabaja;
  - o Negarse a emplear a un familiar suyo;
  - o Reportarle al gobierno para su deportación;
  - o Reducir sus horas de trabajo o la cantidad que gana;
  - o Amenazarlo con problemas legales o usar a su abogado para hacerle daño;
  - o Hacer cualquier otra amenaza o tomar cualquier acción dañina contra usted.
- También es ilegal que alguien le obligue a firmar un documento con información falsa sobre las horas que trabaja, el pago que recibe, o cualquier otra cosa relacionada con sus derechos a la FLSA.
- Usted tiene el derecho legal de decir la verdad sobre sus condiciones de trabajo sin que nadie lo amenace o lo cause daño.

- Estas leyes se aplican a usted sin importancia de su estatus migratorio.

**Si ocurre alguna de estas acciones, comuníquese inmediatamente con el DOL al (619) 557-5110.**

23-cv-172 JM(BLM)

**EXHIBIT B**
**YOUR RIGHTS UNDER THE FLSA**
**(Arizona)**

The U.S. Department of Labor ("DOL") and your employer have reached an agreement to resolve the Department's investigation under Fair Labor Standards Act (FLSA) into your employer's pay practices.  Under the FLSA:

- If you work 40 hours a week or less, your employer must pay you the federal minimum wage, which is $7.25 per hour, for all hours worked.
  - For example, if you worked 40 hours at an hourly rate of $5.00, or less than the federal minimum wage, your employer would owe you more money.
  - You can calculate what your employer would owe you by multiplying the hours that you worked by the difference between the federal minimum wage and the hourly rate that you were paid.
  - In this example, the difference between the minimum wage ($7.25) and your hourly rate ($5.00) is $2.25. You would multiply $2.25 by 40 hours to determine that your employer owes you $90.00.
- Under federal law, if you work more than 40 hours per week, your employer owes you your hourly rate or the Arizona state minimum wage (which is higher than the federal minimum wage), whichever is higher, for all hours that you work. Your employer also owes you additional overtime pay for all hours that you worked over 40 hours.
  - Federal Overtime pay is in addition to your normal hourly pay and must be 50 percent of your normal hourly pay or the Arizona state minimum wage, whichever is higher, for each hour that you work.
  - Through December 31, 2023, the Arizona state minimum wage is $13.85.
  - The Arizona state minimum wage may increase each year because the Arizona State's Fair Wages and Healthy Families Act provides for a yearly cost-of-living increase on January 1 of each year.
  - For example, if your hourly rate was $13.85 an hour, and you worked 50 hours in a week, you would be owed:
    - Your normal pay for each hour (also known as "straight time"), 50 hours x $13.85 = $692.50.
    - Under federal law, you also would be owed overtime pay for all hours over 40 that you worked. In this example, you worked 10 hours more than 40 hours. Your hourly rate $13.85, which is higher than the federal minimum wage and equivalent to the state minimum wage. The overtime pay for each hour would be $13.85 multiplied by 50 percent, which equals $6.925. Therefore, your overtime premium for that week would 10 hours x $6.925 = $69.25

23-cv-172 JM(BLM)

- o Your total weekly pay would therefore be $692.50 + $69.25 = $761.75.
- o For example, if you worked for an employer in Arizona, your hourly rate was $5.00 an hour, and you worked 50 hours in a week, you would be owed:
  - ▪ Your normal pay for each hour, 50 hours x $5.00 = $250.00.
  - ▪ You also would be owed difference between your pay of $5.00 an hour and Arizona minimum wage of $13.85 per hour, 50 hours x $8.85 = $442.50
  - ▪ In addition, under federal law, you would be owed overtime pay for all hours over 40 that you worked. In this example, you worked 10 hours more than 40 hours. The overtime pay for each hour would be $13.85 multiplied by 50 percent, which equals $6.40. Therefore, your overtime premium for that week would 10 hours x $6.925 = $69.25
- o Your total weekly pay would therefore be $250.00 + $442.50 + $69.25 = $761.75.
- Your employer must correctly document and report each hour you work and all pay you receive.
- Your employer cannot threaten you or take action against you for speaking to a DOL representative, participating in a DOL legal case, or exercising your FLSA rights.
- **It is illegal for anyone to harm you because you talked to a DOL representative, participated in a DOL legal case, or spoke up about your FLSA rights.  It is illegal for your employer to take the following actions because you exercised your FLSA rights:**
  - o Fire you or any friends or relatives that work with you;
  - o Refuse to pay you for all hours you work;
  - o Refuse to hire a relative of yours;
  - o Report you to the government for deportation;
  - o Reduce your work hours or the amount you earn;
  - o Threaten you with legal problems or threaten to use their lawyer to harm you;
  - o Make any other threat or take any harmful action against you.
- It is also illegal for anyone to force you to sign a document with false information about the hours you work, pay you receive, or anything else related to your FLSA rights.
- You have the legal right to tell the truth about your working conditions without anyone threatening or causing you harm.
- These laws apply to you regardless of your immigration status.

**If any of these actions occur, please immediately contact the DOL at (619) 557-5110**

23-cv-172 JM(BLM)

# EXHIBIT C

# Payment Plan

| Payment Date | Payment | Payment Amount Credited To | Principal | Interest | Payment Made | Balance |
|---|---|---|---|---|---|---|
| 2/15/2023 | $  16,928.87 | Liquidated Damages | $   16,428.75 | $    500.12 | $416,928.87 | $  583,713.43 |
| 3/15/2023 | $  16,928.87 | Liquidated Damages | $   16,442.44 | $    486.43 | $433,857.74 | $  567,270.99 |
| 4/15/2023 | $  16,928.87 | Liquidated Damages | $   16,456.14 | $    472.73 | $450,786.61 | $  550,814.84 |
| 5/15/2023 | $  16,928.87 | Liquidated Damages | $   16,469.86 | $    459.01 | $467,715.48 | $  534,344.98 |
| 6/15/2023 | $  16,928.87 | Liquidated Damages | $   16,483.58 | $    445.29 | $484,644.35 | $  517,861.40 |
| 7/15/2023 | $  16,928.87 | Liquidated Damages | $   16,497.32 | $    431.55 | $501,573.22 | $  501,364.08 |
| 8/15/2023 | $  16,928.87 | Back Wages + Liquidated Damages | $   16,511.07 ($14,400.49 Back Wages & 2,110.58 Liquidated Damages) | $    417.80 | $518,502.09 | $  484,853.01 |
| 9/15/2023 | $  16,928.87 | Back Wages | $   16,524.83 | $    404.04 | $535,430.96 | $  468,328.19 |
| 10/15/2023 | $  16,928.87 | Back Wages | $   16,538.60 | $    390.27 | $552,359.83 | $  451,789.59 |
| 11/15/2023 | $  16,928.87 | Back Wages | $   16,552.38 | $    376.49 | $569,288.70 | $  435,237.21 |
| 12/15/2023 | $  16,928.87 | Back Wages | $   16,566.17 | $    362.70 | $586,217.57 | $  418,671.04 |
| 1/15/2024 | $  16,928.87 | Back Wages | $   16,579.98 | $    348.89 | $603,146.44 | $  402,091.06 |
| 2/15/2024 | $  16,928.87 | Back Wages | $   16,593.79 | $    335.08 | $220,079.31 | $  385,497.27 |
| 3/15/2024 | $  16,928.87 | Back Wages | $   16,607.62 | $    321.25 | $637,004.18 | $  368,889.65 |
| 4/15/2024 | $  16,928.87 | Back Wages | $   16,621.46 | $    307.41 | $653,933.05 | $  352,268.18 |
| 5/15/2024 | $  16,928.87 | Back Wages | $   16,635.31 | $    293.56 | $670,861.92 | $  335,632.87 |
| 6/15/2024 | $  16,928.87 | Back Wages | $   16,649.18 | $    279.69 | $687,790.79 | $  318,983.69 |
| 7/15/2024 | $  16,928.87 | Back Wages | $   16,663.05 | $    265.82 | $704,719.66 | $  302,320.64 |
| 8/15/2024 | $  16,928.87 | Back Wages | $   16,676.94 | $    251.93 | $721,648.53 | $  285,643.71 |
| 9/15/2024 | $  16,928.87 | Back Wages | $   16,690.83 | $    238.04 | $738,577.40 | $  268,952.87 |
| 10/15/2024 | $  16,928.87 | Back Wages | $   16,704.74 | $    224.13 | $755,506.27 | $  252,248.13 |
| 11/15/2024 | $  16,928.87 | Back Wages | $   16,718.66 | $    210.21 | $772,435.15 | $  235,529.47 |
| 12/15/2024 | $  16,928.87 | Back Wages | $   16,732.60 | $    196.27 | $789,364.02 | $  218,796.87 |
| 1/15/2025 | $  16,928.87 | Back Wages | $   16,746.54 | $    182.33 | $806,292.89 | $  202,050.33 |
| 2/15/2025 | $  16,928.87 | Back Wages | $   16,760.49 | $    168.38 | $823,221.76 | $  185,289.84 |
| 3/15/2025 | $  16,928.87 | Back Wages | $   16,774.46 | $    154.41 | $840,150.63 | $  168,515.38 |
| 4/15/2025 | $  16,928.87 | Back Wages | $   16,788.44 | $    140.43 | $857,079.50 | $  151,726.93 |
| 5/15/2025 | $  16,928.87 | Back Wages | $   16,802.43 | $    126.44 | $874,008.37 | $  134,924.50 |
| 6/15/2025 | $  16,928.87 | Back Wages | $   16,816.43 | $    112.44 | $890,937.24 | $  118,108.07 |

| Payment Date | Payment | Payment Amount Credited To | Principal | Interest | Payment Made | Balance |
|---|---|---|---|---|---|---|
| 7/15/2025 | $ 16,928.87 | Back Wages | $ 16,830.45 | $ 98.42 | $907,866.11 | $ 101,277.62 |
| 8/15/2025 | $ 16,928.87 | Back Wages | $ 16,844.47 | $ 84.40 | $924,794.98 | $ 84,433.15 |
| 9/15/2025 | $ 16,928.87 | Back Wages | $ 16,858.51 | $ 70.36 | $941,723.85 | $ 67,574.64 |
| 10/15/2025 | $ 16,928.87 | Back Wages | $ 16,872.56 | $ 56.31 | $958,652.72 | $ 50,702.08 |
| 11/15/2025 | $ 16,928.87 | Back Wages | $ 16,886.62 | $ 42.25 | $975,581.59 | $ 33,815.47 |
| 12/15/2025 | $ 16,928.87 | Back Wages | $ 16,900.69 | $ 28.18 | $992,510.46 | $ 16,914.77 |
| 1/15/2026 | $ 16,928.87 | Back Wages | $ 16,928.87 | $ 14.10 | $1,009,439.33 | $ 0.00 |

23-cv-172 JM(BLM)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

**Deed of Trust**

**RECORDING REQUESTED BY:**
United States Department of Labor
Office of the Solicitor
Attn: Adriana Ahumada, Trial Attorney
90 Seventh Street, Suite 3-700
San Francisco, CA 94103


**AND WHEN RECORDED MAIL TO:**
United States District Court
333 W. Broadway, Suite 420
San Diego, CA 92101

COURTESY  RECORDING
NO ESCROW OR TITLE LIABILITY

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

Date: March __, 2023

TRUSTOR: Javier Martin Freig Carillo, Trustee of Freig Family Trust

TRUSTOR'S MAILING ADDRESS:

TRUSTEE:  LANDMARK TITLE ASSURANCE AGENCY OF ARIZONA LLC, an Arizona Limited Liability Company
         7479 E. Tanque Verde, Tucson, AZ

BENEFICIARY:  U.S. Department of Labor

BENEFICIARY'S ADDRESS:
90 Seventh Street, Suite 3-700
San Francisco, CA 94103


PROPERTY situated  in County of Santa Cruz, State of Arizona, described as:

    Lot 103, Villa San Simone, according to the plat of record in the office of the Court Recorder of Santa Cruz
    County, Arizona, recorded in Book 4 of Maps, Page 88.

    APN 102-01-203

    The common address of which is:
    312 West Santa Barbara Street, Nogales, AZ 85621


THIS DEED OF TRUST is made between the Trustor, Trustee and Beneficiary named above.  Trustor irrevocably grants and
conveys to Trustee in trust, with power of sale, the above-described real property and all buildings, improvements, easements,
appurtenances, and fixtures located thereon or hereinafter erected thereon, together with the leases, rents, issues, profits, or income
thereof, (all of which are hereinafter called "property income"); SUBJECT, HOWEVER, to the right, power and authority
hereinafter given to and conferred upon Beneficiary to collect and apply such property income; AND SUBJECT TO covenants,
conditions, restrictions, rights-of-way, and easement of record.

THIS DEED OF TRUST IS MADE FOR THE PURPOSE OF RECORDING:

Initials: _____    _____    _____

(1) payment in the sum of $600,142.18 per Consent Judgment with interest thereon according to the terms therein made by Trustor payable to order of the Beneficiary, and extensions or renewals thereof;

(2) performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured;

(3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his or her successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

1. To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to damage or impair the property; not to allow the property to deteriorate, or commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; and do all other acts which from the character or use of said property may be reasonably necessary.

2. To provide, maintain, and deliver to Beneficiary fire, vandalism, malicious mischief and hazard insurance policies satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary, the entire amount of so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of trustee's sale hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4. To pay: before delinquent, all taxes and assessments affecting said property; when due, all encumbrances, charges, fines, impositions, dues, and liens, with interest, on said property or any part thereof which appear to be prior or superior hereto; all costs, fees and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as ei ';i'.\'l'.r.:.i._m necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel, and pay counsel's reasonable fees.

5. To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from the date of expenditure at the highest rate as is provided for in the note secured by this Deed of Trust. Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on said premises or shall become immediately due and payable at option of Beneficiary or Trustee.

**IT IS MUTUALLY AGREED:**

6. That any award of damages in connection with any condemnation, or any such taking, or for injury to the property by reason of public use or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefor and for the ownership thereof subject to this Deed of Trust), and, upon receipt of such moneys, Beneficiary may hold the same as such further security or apply or release the same in the same manner and with the same effect as above-provided for disposition of proceeds of fire or other insurance.

7. That time is of the essence of this Deed of Trust, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8. That at any time or from time to time, and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and said Agreement to Forfeit for endorsement, without liability therefor, without affecting the personal liability of any person for payment of the indebtedness secured hereby, without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto and without the necessity that any sum representing the value or any portion thereof of the property affected by the:; Trustee's action be credited on the indebtedness, the Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or either, of any map or plat of the property or any part

Initials: _____   _____   _____

thereof; (c)  join in granting any easement thereon;  and (d)  join in or consent to any extension agreement or any agreement subordinating the lien, encumbrance or charge hereof.

9.    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Agreement to Forfeit to Trustee for cancellation, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall *be* conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

10.   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of this Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable.  Upon any such default, Beneficiary may at any time, without notice, either in person, by agent or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, sue for or otherwise collect such property income in his own name, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such property income and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

11.   That upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust.  Beneficiary also shall deposit with Trustee this Deed of Trust, said Agreement to Forfeit and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale and shall sell the property at public auction, all in the manner required by law.  Any persons, including Trustor, Trustee or Beneficiary, may purchase at such sale.  Trustee shall deliver to such purchaser  its Deed conveying  the property so sold, but without any covenant or warranty, express or implied.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale in the manner provided by law.  To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder.

Beneficiary shall have the option to foreclose this deed of trust in the manner provided by law for the foreclosure of Mortgages on Real Property, including all amounts for cost and expense incident to such proceedings and reasonable attorneys fees.

12.   That Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor.  Beneficiary may appoint a successor Trustee in the manner prescribed by law.  A successor Trustee herein shall, without conveyance for the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers and duties.

13.   Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall *be* conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the *name* of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded, and the name and address of the new Trustee.

14.   The term Beneficiary shall mean the owner and holder of the Agreement to Forfeit secured hereby, whether or not named as Beneficiary herein.  In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

15.   That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of a pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

16.   That the trust relationship created by this Deed of Trust is limited solely to the creation and enforcement of a security interest in real property.  A of  Trustee's duties, whether fiduciary or otherwise, are strictly limited to those duties imposed by this instrument and A.R.S.  §33-&0l *et. seq.,* inclusive, and no additional duties, burdens or responsibilities are or shall be placed on Trustee.

Initials:  _____   _____   _____

17.  That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

18.  It is understood and agreed by the parties hereto that the Trustor shall not assign or otherwise transfer any right, title or interest in or to these premises or this encumbrance during the life of this encumbrance, without the written consent of the Beneficiary to such assignment   transfer.  In the event of such assignment or transfer without written consent, all indebtedness secured by this encumbrances shall, at the option of the Beneficiary, become all due and payable.

**TRUSTORS:**

**Freig Family Trust**

_____
Name: Javier Martin Freig Carrillo
Title: Trustee & Beneficiary

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____


**Consent to Deed of Trust by Freig Family Trust]**

_____
Name: _____
Title: [if applicable]

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____


**Consent to Deed of Trust by [INSERT NAME OF ADDITIONAL TRUST BENEFICIARIES]**

_____
Name: Maria Isabel Rodriguez Schwuchow
Title: Beneficiary

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____

**RECORDING REQUESTED BY:**
United States Department of Labor
Office of the Solicitor
Attn: Adriana Ahumada, Trial Attorney
90 Seventh Street, Suite 3-700
San Francisco, CA 94103

**AND WHEN RECORDED MAIL TO:**
United States District Court
333 W. Broadway, Suite 420
San Diego, CA 92101

COURTESY  RECORDING
NO ESCROW OR TITLE LIABILITY

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

Date: March __, 2023

TRUSTOR: Javier Martin Freig Carillo, Trustee of Freig Family Trust

TRUSTOR'S MAILING ADDRESS:

TRUSTEE:  LANDMARK TITLE ASSURANCE AGENCY OF ARIZONA LLC, an Arizona Limited Liability Company
            7479 E. Tanque Verde, Tucson, AZ

BENEFICIARY:  U.S. Department of Labor

BENEFICIARY'S ADDRESS:
90 Seventh Street, Suite 3-700
San Francisco, CA 94103

PROPERTY situated  in County of Pima, State of Arizona, described as:

Lot 113, HACIENDA DEL RIO, according to the plat of record in the office of the Court Recorder of Pima County, Arizona, recorded in Book 110 of Maps, Page 04.

APN 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.

The common address of which is:
3420 N. Camino Rio Colorado Tucson, AZ 85712-6029

THIS DEED OF TRUST is made between the Trustor, Trustee and Beneficiary named above.  Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, the above-described real property and all buildings, improvements, easements, appurtenances, and fixtures located thereon or hereinafter erected thereon, together with the leases, rents, issues, profits, or income thereof, (all of which are hereinafter called "property income"); SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such property income; AND SUBJECT TO covenants, conditions, restrictions, rights-of-way, and easement of record.

THIS DEED OF TRUST IS MADE FOR THE PURPOSE OF RECORDING:

Initials: _____    _____   _____

(1) payment in the sum of $600,142.18 per Consent Judgment with interest thereon according to the terms therein made by Trustor payable to order of the Beneficiary, and extensions or renewals thereof;

(2) performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured;

(3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his or her successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

1. To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to damage or impair the property; not to allow the property to deteriorate, or commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; and do all other acts which from the character or use of said property may be reasonably necessary.

2. To provide, maintain, and deliver to Beneficiary fire, vandalism, malicious mischief and hazard insurance policies satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary, the entire amount of so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of trustee's sale hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4. To pay: before delinquent, all taxes and assessments affecting said property; when due, all encumbrances, charges, fines, impositions, dues, and liens, with interest, on said property or any part thereof which appear to be prior or superior hereto; all costs, fees and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as ei ';i'.\'l'.r.:.i._m necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel, and pay counsel's reasonable fees.

5. To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from the date of expenditure at the highest rate as is provided for in the note secured by this Deed of Trust. Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on said premises or shall become immediately due and payable at option of Beneficiary or Trustee.

**IT IS MUTUALLY AGREED:**

6. That any award of damages in connection with any condemnation, or any such taking, or for injury to the property by reason of public use or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefor and for the ownership thereof subject to this Deed of Trust), and, upon receipt of such moneys, Beneficiary may hold the same as such further security or apply or release the same in the same manner and with the same effect as above-provided for disposition of proceeds of fire or other insurance.

7. That time is of the essence of this Deed of Trust, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8. That at any time or from time to time, and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and said Agreement to Forfeit for endorsement, without liability therefor, without affecting the personal liability of any person for payment of the indebtedness secured hereby, without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto and without the necessity that any sum representing the value or any portion thereof of the property affected by the:; Trustee's action be credited on the indebtedness, the Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or either, of any map or plat of the property or any part

Initials: _____   _____   _____

thereof; (c)  join in granting any easement thereon;  and (d)  join in or consent to any extension agreement or any agreement subordinating the lien, encumbrance or charge hereof.

9.    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Agreement to Forfeit to Trustee for cancellation, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall *be* conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

10.    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of this Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable.  Upon any such default, Beneficiary may at any time, without notice, either in person, by agent or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, sue for or otherwise collect such property income in his own name, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such property income and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

11.    That upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust.  Beneficiary also shall deposit with Trustee this Deed of Trust, said Agreement to Forfeit and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale and shall sell the property at public auction, all in the manner required by law.  Any persons, including Trustor, Trustee or Beneficiary, may purchase at such sale.  Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, express or implied.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale in the manner provided by law.  To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder.

Beneficiary shall have the option to foreclose this deed of trust in the manner provided by law for the foreclosure of Mortgages on Real Property, including all amounts for cost and expense incident to such proceedings and reasonable attorneys fees.

12.    That Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor.  Beneficiary may appoint a successor Trustee in the manner prescribed by law.  A successor Trustee herein shall, without conveyance for the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers and duties.

13.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall *be* conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the *name* of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded, and the name and address of the new Trustee.

14.    The term Beneficiary shall mean the owner and holder of the Agreement to Forfeit secured hereby, whether or not named as Beneficiary herein.  In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

15.    That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of a pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

16.    That the trust relationship created by this Deed of Trust is limited solely to the creation and enforcement of a security interest in real property.  A of  Trustee's duties, whether fiduciary or otherwise, are strictly limited to those duties imposed by this instrument and A.R.S.  §33-&0l *et. seq.,* inclusive, and no additional duties, burdens or responsibilities are or shall be placed on Trustee.

Initials:  _____   _____   _____

17.  That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

18.  It is understood and agreed by the parties hereto that the Trustor shall not assign or otherwise transfer any right, title or interest in or to these premises or this encumbrance during the life of this encumbrance, without the written consent of the Beneficiary to such assignment   transfer.  In the event of such assignment or transfer without written consent, all indebtedness secured by this encumbrances shall, at the option of the Beneficiary, become all due and payable.

**TRUSTORS:**

**Freig Family Trust**

_____
Name: Javier Martin Freig Carrillo
Title: Trustee & Beneficiary

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____

**Consent to Deed of Trust by Freig Family Trust]**

_____
Name:
Title: [if applicable]

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____

**Consent to Deed of Trust by [INSERT NAME OF ADDITIONAL TRUST BENEFICIARIES]**

_____
Name: Maria Isabel Rodriguez Schwuchow
Title: Beneficiary

State of _____

County of _____

This instrument was acknowledged before me this _____ date of _____, _____

By _____

_____

Notary Public _____

My commission will expire_____